**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JAMES CLARK LEOPPARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Case No. 25-CV-0431-CVE-CDL |
| | ) |
| SHERIFF OF OTTAWA COUNTY, in his | ) |
| official capacity; | ) |
| MIKE LASITER, in his individual capacity; and | ) |
| KRISTOPHER SCHEMBRA, in his | ) |
| individual capacity, | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Before the Court is the motion to dismiss by defendant Sheriff of Ottawa County, in his official capacity (Dkt. # 11). On August 18, 2025, plaintiff James Clark Leoppard filed a complaint, alleging one count: a violation of 42 U.S.C. § 1983, against defendants Mike Lasiter, an officer at the Ottawa County Sheriff's Office, and Kristopher Schembra, an officer at the Ottawa County Sheriff's Office, in their individual capacities, for violating plaintiff's Eighth and Fourteenth Amendment rights to reasonable protection against attacks from other inmates and to be free from cruel and unusual punishment as a pretrial detainee by failing to provide him with access to medical care. In that same count, plaintiff alleges a claim against the Sheriff of Ottawa County, in his official capacity, for municipal liability as the moving force behind the causes of his claims for the failure to reasonably protect him from attacks by other inmates and denial of access to medical care, and based on the alleged policies of failing to adequately staff the jail and failure to adequately train and supervise jail employees, which plaintiff states led to the violations of his constitutional rights and his subsequent injuries.

Defendant Sheriff of Ottawa County moves to dismiss for failure to state a claim upon which relief can be granted, arguing that plaintiff has not pled sufficient facts to show that his codefendants have committed an underlying constitutional violation, in that they neither unconstitutionally failed to reasonably protect plaintiff from attacks by other inmates nor unconstitutionally failed to provide plaintiff with access to medical care.  Even if plaintiff does state claims for underlying violations of his constitutional rights, defendant contends that plaintiff fails to state a plausible § 1983 claim for municipal liability against defendant, in his official capacity.  Defendant argues that plaintiff fails to allege sufficient facts that show that defendant instituted a policy or practice as to staffing shortages, overcrowding, failing to train and supervise employees, failing to provide medical care, and failing to provide sufficient equipment.  Even if plaintiff had shown the existence of a policy, defendant argues that plaintiff both fails to show how this policy or practice led to alleged constitutional violations or injuries, or how they were implemented with deliberate indifference to plaintiff's health and safety.

## I.

The facts of this case arise from plaintiff's arrest and booking into the Ottawa County Jail, which took place on or about August 17, 2023.  Dkt. # 2, ¶¶ 9-10.  Plaintiff alleges that while he was being booked, another inmate warned Lasiter and Schembra that if they put plaintiff in the "D-pod" section of the jail, he would be attacked by other inmates.  Id. ¶ 11.  Despite the warning, plaintiff states that Lasiter and Schembra placed him in the "D-pod" section.  Id. ¶ 12.  The same evening he arrived, around 11:00 p.m., plaintiff alleges that he was sleeping in his bunk, when several inmates entered his cell, removed him from his bed, and assaulted him.  Id. ¶¶ 13-14.  Plaintiff states that he was left lying in a pool of his own blood on the ground of the cell between the time of the attack and

the next morning, when it was discovered he had multiple broken ribs, a concussion, head trauma, and cuts and bruises on his body and face.  Id. ¶¶ 16-17.  The next morning, jail staff transported plaintiff from his cell to another part of the jail for a virtual hearing with a judge, after which he was given a personal recognizance bond and transferred to a hospital for treatment.  Id.  ¶¶ 18-19.  Plaintiff alleges that between the time he entered his cell on the evening of August 17 and the time he was transported to the virtual hearing on August 18, around 8:00 a.m., jail staff did not conduct any visual checks on his cell.  Id. ¶¶ 21-25.  During that time, jail staff also did not call an ambulance or otherwise seek medical attention for plaintiff.  Id.  ¶ 25.

Defendant Sheriff of Ottawa County filed a motion to dismiss for failure to state a claim (Dkt. # 11), to which plaintiff responded (Dkt. # 29), and defendant replied (Dkt. # 30).  The motion is ripe for review.

**II.**

When a party moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether plaintiff has stated a claim upon which relief can be granted.  To survive a motion under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Tenth Circuit has interpreted the plausibility requirement to mean that if the allegations contained in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  Robbins v. Okla. ex. rel. Dep't of Hum. Servs., 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Twombly, 550 U.S. at 570).  The allegations must also "be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim to relief."  Id. (footnote omitted).  Put differently, for a claim to

survive a Rule 12(b)(6) motion, there must be "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting Twombly, 550 U.S. at 555); see also Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976) ("A motion to dismiss under Fed. Rules Civ. Proc., rule 12(b) admits all well-pleaded facts in the complaint as distinguished from conclusory allegations.").

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Tal v. Hogan, 453 F.3d 1244, 1252 (10th Cir. 2006) (quoting Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999)). The facts alleged "must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citation omitted) (citing 5 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1216 (3d ed. 2004)). For the purposes of making a dismissal determination, a court must accept as true all well-pleaded allegations in the complaint and construe the allegations in the light most favorable to the claimant. Iqbal, 556 U.S. at 678-79.

**III.**

In his complaint, plaintiff brings a claim against the Sheriff of Ottawa County, in his official capacity, and Ottawa County Sheriff's Department employees, Mike Lasiter and Kristopher Schembra, in their individual capacities. First, plaintiff brings the claim under 42 U.S.C. § 1983 for

violations of his "Eighth and/or Fourteenth Amendment" rights, against Lasiter and Schembra for failing to reasonably protect plaintiff from attacks by other inmates.[1]  Dkt. # 2, ¶¶ 24-30, 58-67. Even if neither officer is individually responsible for the violation of plaintiff's right to be protected from violence by other prisoners, plaintiff asserts the claim against the Sheriff of Ottawa County under a theory of municipal liability for the systemic failure of the Sheriff's policies and procedures to protect him from violence by other inmates.  Id. ¶¶ 33-47, 68-74.  Plaintiff also brings the claim under the Eighth and Fourteenth Amendment against Lasiter and Schembra, individually, as well as the Sheriff in his official capacity, for failing to provide plaintiff with access to medical care, constituting deliberate indifference to his serious medical need.  Id. ¶¶ 48-56.  Even if neither officer is individually responsible for a violation of plaintiff's constitutional right to access medical care, plaintiff seeks to assert the claim against the Sheriff of Ottawa County for municipal liability under the theory that he instituted a series of policies, customs, and practices—including staffing shortages, overcrowding, failure to train jail staff, and failure to supervise jail staff—that led to the violations of plaintiff's Eighth and Fourteenth Amendment rights and his subsequent injuries.  Id. ¶¶ 33, 34.

Defendant Sheriff of Ottawa County moves to dismiss plaintiff's complaint for failure to state a claim on several grounds.  First, he argues that plaintiff fails to allege that any member of the jail

---

[1]    Plaintiff's constitutional right to be protected from harm by other inmates generally arises under the Eighth Amendment right to be free from cruel and unusual punishment, which is applied to him as a pretrial detainee through the Fourteenth Amendment's due process guarantee.  Berry v. City of Muskogee, 900 F.2d 1489, 1493 (10th Cir. 1990); Bell v. Wolfish, 441 U.S. 520, 535 (1979).

staff committed an underlying constitutional violation.[2]  Specifically, he argues that no member of his staff is alleged to have acted with deliberate indifference for failing to protect plaintiff, in that no officer had enough information to know there was a "strong likelihood" of a known risk that they subsequently disregarded. Dkt. # 11, at 9-10.  Second, defendant asserts that plaintiff has not alleged sufficient facts to show that any jail employee knew or should have known that an assault had occurred or that plaintiff required medical attention, and without any allegation of knowledge, plaintiff is unable to show that defendants were deliberately indifferent to his health or safety.  Id. at 10-11.  Third, defendant argues that plaintiff fails to plead sufficient facts for the municipality to be liable for any underlying constitutional violation, given that plaintiff does not allege that a custom or policy was the moving force behind the violations of plaintiff's constitutional rights and his resultant injury.  Id. at 11-16.  And even if plaintiff has alleged that an official custom or policy led to violations of his constitutional rights and his injuries, plaintiff also fails to establish that defendant was deliberately indifferent to the deprivation(s) of plaintiff's constitutional rights, rendering municipal liability inappropriate.  Id. at 13-16.  The Court addresses each of defendant's grounds for dismissal in turn.

A.    **Failure to Protect**

It is well-settled that the Eighth Amendment imposes a duty on prison officials "to protect

---

[2]    In his motion to dismiss, the Sheriff of Ottawa County argues for dismissal of the underlying constitutional claims against his co-defendants, Lasiter and Schembra, for failure to state a claim on which relief may be granted, in making his argument that plaintiff has not shown there to be any underlying constitutional violation—a precondition for municipal liability. See Dkt. # 11, at 8 (quoting Fenn v. City of Truth or Consequences, 983 F.3d 1143, 1150 (10th Cir. 2020)).  Although Lasiter and Schembra have answered plaintiff's complaint (Dkt. # 13) and have not moved to dismiss plaintiff's claims against them, the Court analyzes the Sheriff of Ottawa County's arguments as to the underlying constitutional claims, which impacts the individual officers.

prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994); Requena v. Roberts, 893 F.3d 1195, 1214 (10th Cir. 2018); Hooks v. Atoki, 983 F.3d 1193, 1205 (10th Cir. 2020). This guarantee has been held to apply to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520 n.16 (1979) (citing Ingraham v. Wright, 430 U.S. 651, 671-72 n.40 (1977)). To prevail on a failure to protect claim, in which it is alleged that a prison official failed to protect an inmate from harm by another inmate, a plaintiff must show both an objective and subjective component. Requena, 893 F.3d at 1214 (quoting Howard v. Waide, 534 F.3d 1227, 1236 (10th Cir. 2008)); see also Benefield v. McDowall, 241 F.3d 1267, 1271 (10th Cir. 2001). The objective component requires a showing that the conditions of incarceration pose "a substantial risk of serious harm." Benefield, 241 F.3d at 1271. The subjective component of the deliberate indifference showing requires that a defendant be alleged to have known of an excessive risk to plaintiff's health or safety and disregarded that risk. Farmer, 511 U.S. at 837.

In the context of threats among inmates, the Tenth Circuit observed in Turner v. Oklahoma County Board of County Commissioners, 804 F. App'x 921 (10th Cir. 2020) (unpublished),[3] that the "unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." Id. at 926 (quoting Marbury v. Warden, 936 F.3d 1227, 1236 (11th Cir. 2019) (per curiam)). In Turner, the Tenth Circuit found that for a member of jail staff to be found liable for failure to protect, he had to "possess enough details about a threat to enable them to conclude that it presents a strong likelihood

---

[3]    Unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

of injury, not a mere possibility"; in other words, "[s]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." Id.[4] (emphasis in original) (quoting Marbury, 936 F.3d at 1236).   In other instances the Tenth Circuit has found that allegations of generalized threats with insufficient detail do not rise to the level of excessive risk necessary to show deliberate indifference.   See, e.g., Riddle v. Mondragon, 83 F.3d 1197, 1205-06 (10th Cir. 1996) (affirming a district court's dismissal of a complaint alleging generalized concerns for fear of an inmate's life without more specific detail for failure to state a claim both as to the objective and subjective showings for failure to protect); Pittman v. Kahn, No. 23-1153, 2024 WL 507476, at *3 (10th Cir. Feb. 9, 2024) (finding allegations of threats by unnamed prisoners without any specific detail insufficient to show that there was a substantial risk of serious harm and affirming dismissal for failure to state a claim).   By contrast, the Tenth Circuit has found there to be deliberate indifference in cases in which there were alleged threats with enough detail and specificity that a member of jail could conclude that there was a strong likelihood of harm to the inmate.   See, e.g., Requena, 839 F.3d at 1213-14 (holding plaintiff to have sufficiently alleged that jail staff were deliberately indifferent to repeated reports of threats that an inmate would be beaten by other Native American inmates because he had caused guards to confiscate drumsticks used in the jail's Native

---

[4]   Plaintiff takes issue with defendant's citation of Turner to support the proposition that not all threats between inmates allow a court to impute actual knowledge of the substantial risk of harm to a defendant. See Dkt. # 29, at 12-13. He argues that it is an unpublished decision that is not binding and that it is inapposite because it "involved a convicted prisoner, as opposed to a pretrial detainee." Id. at 13. As to the first point, the Court notes that the opinion is unpublished, but cites it for its persuasive value. As to the second point, Turner does, in fact, involve a claim for failure to protect a pretrial detainee, who had not yet been convicted. Turner, 804 F. App'x at 923 ("The district court dismissed Raushi Turner's complaint, which alleged constitutional deprivations when he was a pretrial detainee at the Oklahoma County Detention Center . . . ." (emphasis added)).

American callout for decades); Benefield, 241 F.3d at 1271-72 (affirming a district court's finding that a correctional officer was deliberately indifferent to the risk of harm in that she labeled an inmate as a snitch to other inmates and was alleged to be aware of the danger associated with that reputation).

### 1.      Individual Officer Liability

Accepting as true the well-pled facts in plaintiff's complaint, the Court cannot conclude that plaintiff has alleged sufficient facts to state a claim against the individual officers for a violation of his constitutional right to protection from harm by other inmates.  Here, plaintiff alleges that while he was being booked into the jail, another inmate named Larry Kidwell told Lasiter and Schembra "that they should not put [plaintiff] in the 'D-pod' part of the [j]ail, or else he would be attacked by other inmates."  Dkt. # 2, ¶ 11.  Despite this warning, Lasiter and Schembra placed plaintiff in the "D-pod" area of the jail, where a group of inmates are alleged to have entered his cell during his first night there and attacked him.  Id. ¶¶ 12, 14.  Even if the Court accepts as true that the officers were warned that plaintiff would be attacked by other inmates if placed in this cell, plaintiff fails to allege sufficient details of the warning to allow the Court to conclude that the threat was "so great as to make it highly probably that harm would follow."  Berry v. City of Muskogee, 900 F.2d 1489, 1494 (10th Cir. 1990).  "The mere showing of simple, or even heightened, negligence does not establish that [defendants] were subjectively aware of the risk."  Verdecia v. Adams, 327 F.3d 1171, 1176 (10th Cir. 2003).  Here, the officers were told that there was a risk of attack, but without more, a broad warning of a possible attack cannot suffice to meet the subjective showing that there was a high probability that an attack would follow.  For this reason, the Court cannot conclude that Lasiter and Schembra were "both aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists, and dr[e]w that inference." Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998). Plaintiff, therefore, does not meet the minimum pleading requirement to state a claim for failure to protect against any individual officer under the Eighth and Fourteenth Amendments. Based on this finding, the Court need not proceed to determining whether the individual officers' violations were caused by a policy or practice behind which the Sheriff of Ottawa County was the moving force. Graves v. Thomas, 450 F.3d 1215, 1218 (10th Cir. 2006) ("[A] municipality may not be held liable where there was no underlying constitutional violation by any of its officers.") (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 1986)); see also Crowson v. Washington Cnty. Utah, 938 F.3d 1166, 1186 (10th Cir. 2020) (citing Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992)); Crown Point I, LLC v. Intermountain Rural Elec. Ass'n, 319 F.3d 1211, 1216 (10th Cir. 2003).

**2.      Municipal Liability**

Plaintiff alleges that even if no single officer violated his right to protection from violence by other inmates, a systemic failure of the Sheriff of Ottawa County's policies and procedures, including staffing deficiencies and facilities procedures, caused the violation of his rights under the Eighth and Fourteenth Amendments and his subsequent injury. Dkt. # 2, ¶ 33. To support this claim, plaintiff alleges that on numerous occasions, inmates have been assaulted or injured at the jail at the hands of other inmates as a result of jail overcrowding, and the inability to access a working intercom. Id. ¶¶ 34-47. "In the Tenth Circuit, while unusual, municipal liability may exist without individual liability . . . ." Lucas v. Turn Key Health Clinics, LLC, 58 F.4th 1127, 1145 (10th Cir. 2023). When a claim is brought against a party in his official capacity, that "person" acts a local government unit that can be found liable for damages under § 1983 so long as its "policy or custom,

whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury." Monell v. Dep't of Soc. Servs., 436 US. 658, 694 (2018).  As a result, the Supreme Court "require[s] a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury," which "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403-04 (1997).  It is not enough for a plaintiff to allege that the unconstitutional actions of a government employee caused his injury. Id. at 403 ("A municipality may not be held liable under § 1983 solely because it employs a tortfeasor." (citing Monell, 436 U.S. at 692)).  Liability attaches to the municipality when deliberate action by the municipality is the "moving force" behind the injury alleged. Id. at 400.  The policy must also be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1189 (10th Cir. 2010) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)). Such a policy can take the form of "a formal regulation or policy statement, an informal custom that amounts to a widespread practice, decisions of municipal employees with final policymaking authority, ratification by final policymakers of the decisions of subordinates to whom authority was delegated, and the deliberately indifferent failure to adequately train or supervise employees," among others. Pyle v. Woods, 874 F.3d 1257, 1266 (10th Cir. 2017) (citing Brammer-Hoelter, 602 F.3d at 1189).  Beyond showing that an underlying constitutional violation occurred, to survive a motion to dismiss a § 1983 claim against a municipal entity, a plaintiff must allege facts that show "(1) an official policy or custom, (2) causation, and (3) deliberate indifference." Lucas v. Turn Key Health

11

Clinics, LLC, 58 F.4th 1127, 1145 (10th Cir. 2023).  Plaintiff alleges that a panoply of systemic

failures led to the constitutional violation at hand, including "chronic shortage of detention officers,

a failure of detention officers to follow [j]ail policies, and crowding at the [j]ail have made it

impossible to adequately supervise the [j]ail."[5]  Dkt. # 2, ¶ 34.  To prevail on any one of these

allegations, plaintiff must show the existence of a custom or policy, which caused the failure to

protect plaintiff from harm by other inmates, and which was enacted with deliberate indifference.

First, plaintiff asserts that municipal liability is appropriate based on the "chronic shortage

of detention officers."  To support the claim that municipal liability is appropriate based on a policy

of chronic understaffing, plaintiff cites to reports of twelve inmates who, between October 2022 and

February 2023, required medical attention at the jail in which plaintiff was held.  Id. ¶ 37.  Plaintiff

alleges that "many of these inmates were injured at the hands of other inmates due to a lack of

supervision and deliberate indifference to threat of serious harm by detention staff."  Id. Defendant

counters that this statistic is an implausibly drawn conclusion and the link between these injuries and

an alleged custom of understaffing is mere speculation.  Dkt. # 11, at 14.  Although the Court can

and must accept as true well-pled facts contained in plaintiff's complaint, it is unable to accept as

true a formulaic recitation of the elements of a cause of action or conclusory allegations.  Kan. Penn

---

[5]  Plaintiff's complaint does not differentiate between policies alleged to have been the "moving force" behind the alleged failure to protect and the alleged failure to provide medical care.  See Dkt. # 2.  Defendant, in his motion to dismiss, attempts to group them broadly into general policies.  See Dkt. # 11.  Plaintiff, in his reply, groups them as "policies or customs related to the failure to protect claim" and "policies and customs related to the right to adequate medical care claim."  Dkt. # 29, at 15, 19.  The Court analyzes plaintiff's claims as he groups them, relating to the failure to protect (understaffing/overpopulating, failure to provide a working intercom) and the failure to provide adequate medical care (understaffing/failing to conduct required site checks, failure to adequately supervise/train jail staff).  Id. at 15-23.

Gaming, 656 F.3d at 1214 (quoting Twombly, 550 U.S. at 555). The alleged statistic that twelve inmates were seriously injured at the jail and required transportation to the hospital is a fact that the Court may and even must accept as true. By contrast, the allegation that these injuries were "due to a lack of supervision and deliberate indifference to a threat of serious harm by detention staff" is a legal conclusion, which the Court may not accept as true. Dkt. # 2, ¶ 37. Plaintiff also tries to support the conclusion that a municipal policy of chronic staffing shortages led to his constitutional violations by citing to reports from 2021, 2022, and 2023, in which detention staff were found to have routinely failed to conduct required site checks. Id. ¶¶ 38-40. While the Court must accept as true that staff were previously found to have failed to conduct required, routine site checks,[6] plaintiff fails to allege that this failure has any bearing on the violation of his constitutional rights as to defendant's alleged failure to protect him from harm by other inmates. Instead plaintiff's allegations must be read as legal conclusions, such as his assertion that the "Sheriff's/County's deliberate indifference to the . . . reports [of routine site check failures], and other clear evidence, warning that short staffing and overcrowding continue to lead to detainee-on-detainee violence violates all detainees' rights to be free from harm and threat, in violation of the United States Constitution."

---

[6]     Plaintiff seeks to draw the Court's attention to reports produced by the Oklahoma Department of Health's Jail Inspection Division (Dkt. # 2, ¶ 36) and the Oklahoma Jail Standards (id. ¶ 21) on the issue of visual cell checks and their frequency. When a court relies on material outside of the pleadings before it, it must treat a 12(b)(6) motion as a motion for summary judgment, and failure to do so is a reversible error. Foremaster v. City of St. George, 882 F.2d 1485, 1491 (10th Cir. 1989); Torres v. First State Bank of Sierra Cnty., 550 F.2d 1255, 1257 (10th Cir. 1977); Becher v. United Healthcare Servs., 374 F. Supp. 3d 1102, 1106 (D. Kan. 2019). Thus, a court deciding a motion to dismiss is typically unable to consider matters beyond the four corners of the complaint. Tal v. Hogan, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006); Fuqua v. Santa Fe Cnty. Sheriff's Off., 157 F.4th 1288, 1297 (10th Cir. 2025). For this reason, the Court accepts as true well-pled facts as to events that have occurred at the jail, and it does not review or rely on the underlying reports to which plaintiff alludes in his complaint in making its findings.

Dkt. # 2, ¶ 44. For this reason, plaintiff fails to show that a municipal policy of staffing shortages caused a failure to protect him from violence by other inmates.

Plaintiff argues that the Court should find that he has pled sufficient facts to show that the existence of a municipal policy of understaffing led to a failure to protect him from harm, based on the Tenth Circuit's finding in Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999), abrogated in part by Brown v. Flowers 974 F.3d 1178, 1182 (10th Cir. 2020). Dkt. # 29, at 15-16. In Lopez, the court, in relevant part, overturned the district court's grant of summary judgment against a sheriff, given that the plaintiff had met all three showings required for municipal liability to attach, regarding a policy of understaffing county jails that was the moving force behind the plaintiff's injury. 172 F.3d at 762-63. There, the court considered a statement by the sheriff to jail investigators, as well as an affidavit by a former detention officers, in which both men expressed their opinions as to the existence of a policy of understaffing. Id. at 763, 762. Lopez provides little help to plaintiff, however, in curing the deficiencies found in his complaint. The Court acknowledges that, if properly pled, a litigant could make a claim that a policy of maintaining a jail at a capacity for which it does not have the requisite number of officers could lead to constitutional violations, specifically for failure to protect inmates from harm by other inmates. But, in this case, the Court finds lacking from plaintiff's complaint sufficiently specific facts—as contrasted with legal conclusions—that would allow it to conclude that a municipal policy of maintaining the jail at below the minimum required staffing capacity caused a violation of plaintiff's right to be protected from harm by other inmates. The types of evidence and testimony the Lopez court considered are also inapposite here, given that the court was faced with a motion for summary judgment, not a motion to dismiss. Id. at 758. Plaintiff's arguments as to the Lopez case cannot cure the deficiencies of plaintiff's complaint, and

14

his arguments as to a municipal policy of understaffing and/or overcrowding must fail as a matter of law.

Plaintiff also vaguely asserts a municipal policy related to the purported fact that the jail's intercom system was not functional between 2021 and 2023. Dkt. # 2, ¶ 42. Plaintiff asserts that the system is required to be functional to report ongoing fights and injuries to inmates and that the system was confirmed as not working by both inmates and the undersheriff. Id. Plaintiff argues that if the system had been functional and adequately monitored, his assault might have been either avoided or timely reported such that he might have received immediate medical attention. Dkt. # 29, at 22. It is unclear whether his assertion that the system was not functional is attached to a municipal policy or whether that policy had any bearing on plaintiff's injury here. Plaintiff does not, for example, allege that he attempted to but was unable to use the intercom system, nor that the lack of working intercom system had any effect on his alleged constitutional deprivation. As defendant points out, there is no general constitutional right to a specific type of safety device. Dkt. # 11, at 21. For these reasons, the Court cannot conclude that any municipal policy related to the jail's intercom system caused plaintiff's alleged injury.

Plaintiff attempts to state claims both against Lasiter and Schembra in their individual capacities, and against the Sheriff of Ottawa County, in his official capacity, for failing to protect him from harm by other inmates. Dkt. # 2, ¶¶ 58-74. However, plaintiff fails to state a claim on which relief can be granted as to the individual officers for failing to show that the officers knew of but disregarded an excessive risk to plaintiff's health or safety in placing plaintiff in the "D-pod" section of the jail, despite a generalized warning. Nor does plaintiff state a claim as to the municipality, showing that any municipal policy—overcrowding and understaffing or failing to

provide working intercoms—was the moving force behind plaintiff's injury and was enacted with deliberate indifference to the possibility of harm.  As such, plaintiff's claim for failure to protect must be dismissed.

**B.      Failure to Provide Medical Care**

Plaintiff also asserts a claim under § 1983 for the alleged violation of his Eighth Amendment right to be free from cruel and unusual punishment, in that defendant failed to provide him with access to medical care.  U.S. CONST. amend VIII.  The Eighth Amendment, as applied to pretrial detainees via the Fourteenth Amendment, "imposes a duty on prison officials to provide humane conditions of confinement including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." Tafoya v. Salazar, 516 F.3d 912, 916 (10th Cir. 2008). To establish a Fourteenth Amendment violation, a plaintiff must demonstrate that a prison official acted with "deliberate indifference" by knowing and disregarding an excessive risk to an inmate's health or safety.  Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000); Farmer, 511 U.S. at 837.  Courts in the Tenth Circuit examining allegations of violations of a pretrial detainee's Fourteenth Amendment right to medical treatment apply a two-part test to determine whether a plaintiff has alleged deliberate indifference to an inmate's serious medical needs. Quintana v. Santa Fe Cnty. Bd. of Comm'rs, 973 F.3d 1022, 1028 (10th Cir. 2022).  A plaintiff alleging deliberate indifference to a substantial risk of harm must allege both an objective component and a subjective component.  Sealock, 218 F.3d at 1209 (quoting Farmer, 511 U.S. at 834).  For the objective component, a plaintiff must show that the "harm suffered rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." Mata v. Saiz, 427 F.3d 745, 753 (10th Cir. 2005) (quoting Farmer, 511 U.S. at 834).  A medical need that is "sufficiently serious" under

the objective standard is one "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting Sealock, 218 F.3d at 1209). When the claim is for a delay in medical care, the objective component must be fulfilled by showing that "the delay resulted in substantial harm." Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001). For the subjective component, like the subjective component of a deliberate indifference standard for a failure to protect claim, a plaintiff must allege that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer, 511 U.S. at 837; Mata, 427 F3.d at 751.

Plaintiff alleges that following the attacked by a group of inmates, plaintiff was left in his cell and "not checked on for approximately 12 hours," during which time he "was laying in a pool of his own blood with cuts and bruises all over his body and face." Dkt. # 2, ¶¶ 22, 24. Plaintiff also alleges that once jail staff did find him in his cell, they proceeded to transport him to his virtual hearing, in which it "was obvious to all participating . . . that [he] had sustained serious injuries." Id. ¶ 18. The facts as alleged and accepted as true meet the objective prong of the deliberate indifference analysis as to failure to provide medical care—that plaintiff's state, lying in a pool of his own blood and unconscious, would be easily recognizable to a lay person as necessitating a doctor's attention. See Estate of Booker v. Gomez, 745 F.3d 405, 430 (10th Cir. 2014); Mata, 427 F.3d at 751. Defendant does not seem to contest this. At issue, however, is whether plaintiff has shown the subjective component, that either Lasiter and Schembra individually knew of plaintiff's condition and disregarded the excessive risk to his health or safety by not seeking medical attention, or the Sheriff of Ottawa County instituted a policy or practice that was the moving force behind the

jail staff's knowledge of and disregard for an excessive risk to plaintiff's health and safety.

### 1.     Individual Officer Liability

Defendant contests that plaintiff alleges any facts that indicate that a member of the jail staff had actual knowledge of plaintiff's injury. Dkt. # 11, 10-11; Dkt. # 30, at 3-4.  Plaintiff alleges that the need for medical attention would have been obvious to anyone who checked on him, Dkt. # 2, ¶ 24, but he does not allege that any member of staff actually did check on him or learn of his need for medical care.  Because, defendant argues, no jail official is alleged to have known about defendant's injuries, defendant cannot meet the subjective prong of the deliberate indifference test, to show that a member of jail staff both knew of and disregarded the excessive risk to inmate health or safety.  See Sealock, 218 F.3d at 1209.  As to Lasiter and Schembra, the Court agrees with plaintiff.  Neither defendant is alleged to have actually observed plaintiff following the attack, nor that they should have but their individual failures to observe were the result of deliberate indifference to a serious medical need.  Given that neither individual officer is found to have committed an underlying constitutional violation, the Court need not determine whether an official municipal custom or policy caused was the moving force behind the violation.  See Graves, 450 F.3d at 1218; Crowson, 938 F.3d at 1186.  The Court therefore turns to the issue of whether a municipal policy or a systemic failure of policies was the moving force behind the alleged constitutional deprivation and the claimed harm, irrespective of any individual officer's actions.

### 2.     Municipal Liability

Even if no single officer is alleged to have been deliberately indifferent to plaintiff's obvious need for medical attention, plaintiff asserts a theory of systemic failure, under which the Sheriff of Ottawa County is liable for instituting policies and procedures that led to the violation of plaintiff's

Eighth and Fourteenth Amendment rights.  Specifically, plaintiff alleges that the official policies and customs of understaffing and a lack of routine site checks, as well as failing to train and supervise officers, caused plaintiff's injuries and were instituted with deliberate indifference to plaintiff's health and safety.  Dkt. # 2, ¶¶ 45-56.

Plaintiff argues that a "chronic shortage of detention officers" led to the unconstitutional denial of access to medical care.  Dkt. # 2, ¶ 65; Dkt. # 29, at 20.  In support of this argument, plaintiff asserts that detention staff routinely failed to conduct site checks, including on March 4, 2023, when they failed to conduct thirteen of the twenty-four required site checks.  Dkt. # 2, ¶ 39. Again on May 2, 2022, insufficient site checks were performed between 4:45 a.m. and 7:00 a.m.  Id. ¶ 41.  Plaintiff alleges that on several dates site checks were not completed, to illustrate a policy of failing to conduct routine site checks.  He further states that if plaintiff had been visually observed on the night of the attack, "it would have been patently obvious that [p]laintiff had suffered serious and emergent injuries."  Id. ¶ 65.  Yet, missing from plaintiff's complaint is any allegation of a causal connection between the alleged failure to conduct site checks and plaintiff's injury that are not mere legal conclusions.  See, e.g., Id. ¶ 67 ("As a direct proximate result of this deliberate indifference, [plaintiff] suffered actual and severe physical injuries, physical pain and suffering and emotional and mental distress.").  Given that plaintiff fails to meet the second showing, that the official policy caused the injury alleged, the Court is unable to find that plaintiff's complaint alleges sufficient facts to state a claim for relief that is plausible on its face as to a municipal policy of a "chronic shortage of detention officers."

Plaintiff also seeks to allege the existence of a municipal policy of failing to train and supervise jail employees, which he argues led to the failure to provide medical care.  Dkt. # 2, ¶¶

45-47. With respect to claims for failure to train and failure to supervise, in very limited circumstances can a municipality's decision not to train or supervise employees about their legal duty to avoid violating individuals' constitutional rights rise to the level of an official government policy under § 1983. City of Canton v. Harris, 489 U.S. 378, 388-89 (1989). To show that a municipality is liable for a failure to train or failure to supervise, a plaintiff must show that an official with policymaking authority promulgated a policy or custom by failing "to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." Bryson v. City of Okla. City, 627 F.3d 784, 788 (10th Cir. 2010) (quoting Brammer-Hoelter, 602 F.3d 1175, 1189-90 (10th Cir. 2010)). A claim of municipal liability under a theory of either failure to adequately train or failure to supervise employees requires a plaintiff to show that the failure resulted from "deliberate indifference," that "when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, . . . it consciously or deliberately chooses to disregard the risk of harm." Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998). Actual or constructive notice can be shown through a "pattern of tortious conduct"; however, in a "narrow range of circumstances," deliberate indifference may be found in just a single instance in which "a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations." Id. at 1307-08 (citing Brown, 520 U.S. at 409). A municipality can incur liability for a failure to train or failure to supervise only upon proof of deliberate indifference, which is a "stringent standard of fault." Brown, 520 U.S. at 410 (1997).

Plaintiff asserts that defendant failed to adequately train and supervise officers, which he states "resulted in injury to multiple detainees, including" plaintiff. Dkt. # 2, ¶ 47. Despite official, written policies, plaintiff alleges that jail staff were trained to disregard official policies and not to trust inmates. Id. ¶¶ 49, 51. Plaintiff cites to a specific disregard of written policy, in that jail staff are allegedly instructed not to "call an ambulance for an inmate in distress, no matter how dire the inmate's medical need was." Id. ¶¶ 53. Also in contravention of official policies, plaintiff asserts that the jail does not have a physician providing care, nor does it maintain sick call or a sick call list, nor does an administrator or nurse monitor the jail medical care's effectiveness and efficiency. Id. ¶ 54. Even if defendant failed to train jail staff in the specific ways plaintiff alleges, plaintiff would still need to show that these failures resulted from deliberate indifference, such that the municipality had actual or constructive notice that its failure to train and correct these contraventions of its policies would be substantially certain to result in a constitutional violation. See Barney, 143 F.3d at 1307. Plaintiff tries to meet this requirement by pleading that on one other occasion, in 2015, a detainee was found to have suffered and died after being denied medical care at the same jail. Dkt. # 2, ¶ 56. Plaintiff alleges that this inmate was found to have had his constitutional right to medical care violated and that the Ottawa County Sheriff was the moving force behind that policy, the cause of plaintiff's injuries, and was deliberately indifferent. Id. Plaintiff does not allege which policy or policies, specifically, were found to have caused that inmate's injuries, and on what ground that previous case can provide actual or constructive notice to defendant of the substantial certainty that continuation of the policy would result in a constitutional violation. Without a showing that the municipality had notice of a substantial certainty of a risk of harm, and that it deliberately disregarded that risk of harm, there can be no municipal liability. Barney, 143 F.3d at 1307.

21

Plaintiff, therefore, does not allege sufficient facts to state a claim on which relief may be granted as to the existence of a municipal policy of failing to adequately train or supervise jail staff.

Plaintiff fails to state a claim on which relief can be granted as to his claim for failure to access medical care. Plaintiff entirely fails to allege that Lasiter or Schembra knew of plaintiff's injuries; therefore, they cannot have been deliberately indifferent to plaintiff's need for medical care. Because plaintiff fails to state a claim against either officer as to the denial of access to medical care, plaintiff cannot state a claim for municipal liability based on a policy or practice followed by these specific officers. Nor does plaintiff succeed in stating a claim on which relief may be granted for municipal liability even in the absence of liability of either officer. Plaintiff offers two theories of liability—failing to adequately staff the jail and complete routine site checks, and failing to train and supervise jail employees regarding official policies—neither of which is supported by a showing of deliberate indifference. Plaintiff does not allege the existence of a pattern of tortious conduct or allege that the violation of his federal right to access medical care was a highly predictable or plainly obvious consequence of alleged policy failures. As a result, plaintiff's claims for violations of his Eighth Amendment right to adequate medical care, applied to him through the Fourteenth Amendment as a pretrial detainee, must be dismissed.

**IV.**

Accepting as true all non-conclusory factual allegations contained in plaintiff's complaint, the Court does not find that plaintiff has pled that his Eighth or Fourteenth Amendment rights to be protected from harm by other inmates and to access medical care were violated by a municipal policy or custom promulgated by the Sheriff of Ottawa County. In reaching this conclusion, the Court also

finds that plaintiff has not stated a claim for an underlying violation of his constitutional rights by either Lasiter or Schembra, on which municipal liability could be predicated.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss for failure to state a claim (Dkt. # 11) is **granted**. The case is dismissed as to all three defendants. A separate judgment shall be entered herewith.

**DATED** this 9th day of July, 2026.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE